First National Bank of Oneida v. Brandt. Mr. Phelps, I recognize you are court-appointed and the court appreciates your accepting the appointment. Does the dismissal of the case mean the plan is no longer in place? I think the plan may be in place to some extent, Judge, and I hate to just give that issue up. Maybe to some extent. What do you think the best reading of the law is? Is the best reading it's not in place, but, Your Honor, I have a fallback position if the court rules that it's in place while we still have rights, or is it... My position... What's your position? My position is it's not in place, but they were wrong, the district judge was wrong in the first place even in interpreting it if it is in place. Got it. Okay, thank you. Judge, while we're at that point, obviously the issue here dealing with the plan itself was that we were not an undersecured creditor. We were treated throughout as if we were an oversecured creditor, and we were never part of Class 45, which is what the district court crammed us into after the fact because we had a deficiency claim. You have the conundrum you cannot possibly be oversecured and undersecured at exactly the same time when the bankruptcy case was filed, and that is when claims are determined under Section 502D of the Bankruptcy Code. You determine the claim as of the date of filing. And as we know from this court, only oversecured creditors are entitled to receive interest in that period from the filing to confirmation of the plan. That's the Oryx case in this court. We also have the George Regeer. You value the collateral at the date of the filing. As such, we have now a case which has proceeded throughout in bankruptcy that we were oversecured. And indeed, we have the strange scenario that the district court has granted us judgment for that postpetition interest, but at the same time said, you didn't comply with the unsecured claim provisions. We couldn't have both been unsecured and oversecured at the same time. Our position, Judge, is very simple on that. The district court, we think, misunderstood it because it attempted to force us into the box. And where it went wrong, I think, is that in— Of course, all of this is only relevant if the plan remains in effect. Only if the plan does remain in effect. Yeah, which is your alternative position, right? And, you know, the alternative is we don't think it is, but if it is, it was wrong. Right. And so what happened, the judge below said we didn't comply with the pleading instructions regarding Class 45. What you have to do is look at Article 2 of the plan, which defines who goes into Class 45. And you have to be a member of the class before the treatment applies to you. You're saying you had no choice. When you're oversecured, there's no way you could opt into a class for undersecured people. Absolutely not. It's logically impossible as your position. And it would have been wrong on our part to accept the postpetition interest and proceed on that basis and then claim to be undersecured at exactly the same time. How about this? How about when the plan is being written and negotiated? That's the way this happens, right? It's a negotiated matter. You think your client's oversecured at that point, but, hey, this is real estate. Everybody knows the market goes up and down. Why is it that you could not have had a provision in the plan that says, in the event that the collateral is insufficient to cover the claim, then will be treated as an unsecured creditor for the deficiency under Class 45? Why couldn't you have just, as part of the negotiation, written that into the plan? No, because the plan itself provided that our claim was allowed in full as a secure claim when the case was filed. Right. And the case law is that a secure claim A secured claim, though, is dependent on the security, right? at the date of the filing, not at the date of confirmation. It's got nothing to do with the date of confirmation. Mr. Brandt has mentioned that in his brief, but cited absolutely no authority for the proposition that an oversecured creditor is oversecured at confirmation. It's oversecured at the filing, and that is What you would really have liked to have happened, maybe you couldn't make it happen, would be to sell the property right then and there, then you get your money. But, of course, that wasn't going to be allowed, given this was a Chapter 11, and the court was going to allow him to go forward in the status quo and continue making the payments. If Mr. Brandt had said in his plan, which was filed in February of 2010, I give the property back to the bank, we'd have had immediate stay relief, and we'd have known exactly where we stood well before confirmation. When we tried to get stay relief after he breached his plan obligations, he fought us. He didn't want to give up the properties. He wanted to keep them, although by that time he was in default on some of his payments under the plan. Were you in any position, though, at the outset to insist, we want this to stay lifted, we don't care about his promises to pay, we don't trust that real estate values are going down, we'd like our properties sold right now? Not really. You really couldn't have done that? Not really, dear. This was essential in his mind for his reorganization, and he was treating us as oversecured. The bankruptcy court wouldn't have… Wouldn't have allowed you to take that position? No, absolutely not. All right. We were stuck through confirmation of the plan, and he promised to pay us in full. Are you saying you could not have reserved the right? No. The plan promises us payment in full, and it's his plan. And if there's an ambiguity in his plan, it's construed against him, not against us. And there's a… But my question was, are you saying that you were not permitted to reserve the right to pursue an unsecured claim if the collateral wasn't sufficient to cover the debt? We were promised payment in full, and we have collateral. That is what the bankruptcy court recognized. It turned out that the collateral eventually proved insufficient. As Mr. Cole referenced in his brief, perhaps the sales prices weren't adequate, perhaps the price changed, but those are clearly fact issues. And so from that perspective, we did not have that option. It's not our plan. It's his plan, Judge Anton. And he is the one who proposes it. The creditors have no right to propose a plan if the debtor has filed a timely plan, as Mr. Brandt did here. You can object to it, though. There was no need to object. He was proposing to pay us. Why would you object to someone who's proposing to pay you and leave your collateral in place and pay you post-petition interest and give you additional collateral for that? There's no basis to object to that at all. Well, you could say, Your Honor, we'd like to reserve our right to pursue a deficiency in the event that we ever have to sell the collateral and it proves insufficient. That depends on two imponderables. One, he would stop paying, and two, who knows what we'd get at that time. And three, as we were promised payment in full, we had that right if we came up short. Just as I pointed out, even the undersecured creditors had for the remaining part of their secure debt under his confirmed plan. We should never have been put in Class 45. Well, if the district judge had bought your argument below before he's dismissed his petition, how do you put the genie back in the bottle? Haven't they already sort of divided up the money with the other unsecured creditors? How, as a practical matter, do you go back now and say, let's claw back some of that money to give it to the bank? You're not going to. Basically, we are promised to receive $1,362,000 some amount of dollars and 60 cents in the plan. Going forward, if we have to liquidate our collateral and we come up short, we have a separate independent claim. That's what you're saying. It's outside the bankruptcy court. You have the right to go against him. That is why the bankruptcy court granted us stay relief at the end of 2015 to go after him personally. It would not have done so previously. It allowed us to liquidate the collateral, and it understood its own plan and allowed us to then go after him personally to seek to recover what we were owed for the deficiency. Okay, Mr. Leonard. Thank you. You save two minutes for rebuttal. Mr. Cole. I'm Richard Cole on behalf of Donald Brandt. Your Honor, when a creditor files a proof of claim in a case, it is making an admission, and Oneida filed the proofs of claim in this case. It listed valuations for its collateral. Once the proofs of claim are filed and then allowed by the bankruptcy court through the confirmation order, they are subsumed into the plan, and they become binding reis judicata. Therefore, if a proof of claim is filed in a liquidated amount and allowed in full, as Oneida's claim, the resolution by the bankruptcy court deprives the creditor of an opportunity to pursue additional claims for subsequent damages, even if those damages are unknown to the creditor at the time. What about the dismissal of the case? It seems to me that that occurred after the filing of the appeal. The effect of that is something that the district court needs to consider, and it might mean a different result. Yes, Your Honor. We ought to vacate the order remanded for the district court to consider what effect, if any, the dismissal of the case has on the bank's rights. I believe that the case law in the area is unsettled, but it is generally moving in the direction that a Chapter 11 plan will be binding on the debtor and creditors, even if the case is subsequently dismissed. Well, isn't that all the more reason, if the unsettled nature of the case law, all the more reason to send it to the district court to get that ruling in the first instance and get it settled in this record so that it then comes back to us in a posture where, at least for this circuit, we could potentially unsettle it or settle what is unsettled. Excuse me. That is certainly a possibility for this court, Your Honor. I'm not in a position to say whether the case should be remanded for that specific issue, but there is an unsettled matter. I don't know why you're not in a position to do that. Maybe your client would prefer that you not do that, but I think you're in a position to say that that would be a sensible way for us to handle this. Well, if essentially Oneida would have a new cause of action if the plan was found to not be binding, so they could themselves return to district court. If the plan is no longer in place and because of the dismissal of the case, it seems to me that you return to the status quo ante and they have whatever rights they would have had before the case was filed, and they've had the sale of the collateral. If there is a deficiency, it would seem to me that they might be entitled to pursue it, but that would all be a matter of the contract between your client and the bank. I believe Oneida has chosen its remedy and chose to essentially jump the gun and pursue the debtor. It chose a remedy in a bankruptcy proceeding that has since been dismissed. But it proceeded to district court. If it thinks that the dismissal of the case changes the impact of the plan or the applicability of the plan, it can file a new action in district court. This case doesn't necessarily need to be remanded. But the appeal issue, excuse me, the dismissal issue is not valid. They filed a complaint in the district court for the deficiency. That's correct. The district court said that that failed to state a claim because it was inconsistent with what the plan states, right? Yes, Your Honor. And if the dismissal of the bankruptcy case means that the plan is no longer in effect, it would seem to me that one thing the district court might rule is that the earlier reasoning of its order dismissing their complaint for failure to state a claim no longer applies. That's a possibility. Another possibility is that Oneida can return to district court and file a new action based on the dismissal. And this case can proceed on the facts that were at issue when it was originally filed, which is when Oneida chose to proceed. I'm interested in the fact that in your red brief, you asserted that if you were denied a discharge and the bankruptcy case were dismissed, you conceded that First National could proceed with a deficiency against you. It was clearly an error on my part to have stated that as the law is unsettled on that matter. And your client hadn't dismissed the bankruptcy yet. The client had not dismissed the bankruptcy. Perhaps you weren't thinking that was going to happen. It was obviously an oversight on my part. More than an oversight. It was a mistake to have said that, yes. The case law is not settled on that matter. In any event, the issue is not ripe for appeal as a technical matter at this point. All the more reason to send it back. That's quite possible. But in any event, I think the crux of my argument is that Oneida admitted in its claims that the collateral was worth as much as what was owed. And it is Oneida's own admissions that are key here, in that it filed proofs of claim on its own behalf. It valued the collateral. It was under no obligation to provide a value for the collateral. It could have said unknown. It wasn't even obligated to file claims in this case and submit itself to the jurisdiction of the bankruptcy court because it was a secured creditor. It could have chosen not to file claims. It chose to file the claims. It chose to put values for its collateral on those claims. And if it had come in and said we're undersecured, and that's really not true, what would your response have been then? Well, if they had said they were undersecured or put an unknown value for collateral, it would have put the debtor on notice that either he needed to seek evaluation for the collateral or provide a different treatment for Oneida in his plan. But then you probably, the court might well have then allowed immediate sale of the property. Is that correct or not? Oneida chose its remedy as far as— I'm talking about that would have been why your client didn't raise his hand and say let's go that route because they would have then perhaps with the bankruptcy court have had discretion at that time to allow the creditor to make the best out of a bad situation and go ahead and sell the property. At the time the case was filed, the debtor was current on his payments to Oneida. But I'm saying if he comes in with saying it's undervalued, that you had a strategic interest in not having them do that because you didn't want the property sold. You wanted to keep it, right? I don't think the bankruptcy court would have granted stay relief pre-confirmation even if they were undersecured prior to valuation. And I think Oneida also chose to be an oversecured creditor because there are benefits to that. They get their interest. There are also consequences. They don't get to participate as an unsecured creditor in the unsecured creditor class unless they take certain affirmative steps to reserve their rights by indicating that on the face of the claim. So Oneida also proceeded as a fully secured creditor in this case and that was the choice that Oneida made knowing fully that there were both benefits to that and there were consequences, particularly where they failed to reserve their rights. I was going to ask you the same question that I asked opposing counsel. Was there anything to prevent them from reserving the right to pursue an unsecured claim? No, and in fact, that's the standard operating procedure for secured creditors in bankruptcy at this time is that if they are a secured creditor who is going to be paid through the plan, they will include a reservation of their right that in the event they have to take the collateral back, they will be able to either participate as an unsecured creditor or seek a deficiency. That puts the debtor on notice that he either needs to value the property, object to the claim, or provide a different treatment in the plan and puts the other creditors on notice that there is this potential looming issue out there that in the future there could be an additional unsecured creditor who either diminishes what they are receiving out of a POP plan or even in this event may scupper the plan in the future by making it impossible to fulfill the plan by the debtor. So it gives everyone notice, and bankruptcy courts and other courts have essentially required that if a creditor wishes to seek to participate as an unsecured creditor in the future or obtain these deficiencies, that it needs to indicate that at the beginning of the case. This creditor chose not to do that. They should have been aware that there would be consequences for that. And by allowing them to proceed now, you essentially upset the apple cart of bankruptcy here by making it very difficult for credit – for debtors to receive their fresh start because every time they attempt to keep a secured piece of property, the secured creditor can simply sit on its rights and then years later come and say, well, now there's a deficiency or we wish to participate as an unsecured creditor even though we were fully secured back then. I feel that what Oneida is telling us is… Why was the bankruptcy case dismissed? Mr. Brandt agreed to dismissal. Why? What precipitated that? There were several other creditors who had not been paid. Okay. So he wasn't complying with the plan. There were issues with the plan, yes, with his plan compliance, yes, Your Honor. Okay. And – okay. All right. So those issues existed or Oneida would not have sought state relief if he was paying everyone on time. But in the event that the court were defined in favor of Oneida, it could have knock-on issues for other bankruptcy cases, obviously. Then we also have to look at when the evaluation date occurs. Although Congress doesn't specify, the bankruptcy courts have provided four various dates, the petition date, evaluation hearing date, a confirmation date, and the plan's effective date, none of them occur post the effective date. Essentially, Oneida is seeking to now revalue the property after the plan has already become effective in order to pursue its unsecured deficiency claim that it believes it has. What the district court really said is you need to comply with the plan language or at least have reserved your rights in order to proceed. They didn't meet their condition precedent here. All of which depends on whether the plan is in effect or not. Of course, Your Honor. But the game is played at confirmation. They voted in favor of this plan. They didn't object. They did not raise their absolute priority rule objection at that time. They did not reserve their rights to seek a deficiency claim. And by filing their claims, they admitted that the properties were worth what was owed. Therefore, there's simply no grounds for them to seek a deficiency against Mr. Brandt provided the plan is effective. Thank you. Thank you, Mr. Cole. Mr. Leonard, you say reserved two minutes. I did. It was dismissed because he failed to pay the lawyers who represented him in the original Chapter 11, and they eventually came in and complained about it. How does that work? I don't know practically. So how does dismissing it help them get their money? They're not getting paid? It didn't. The bankruptcy court judge said she would narrow judgment for the poor lady who had represented him in the Chapter 11, and she would have to go forth and try and enforce it. And so in response, then the debtor can dismiss that, and then there's no order to pay your debtor. The debtor chose at that stage to dismiss it because the judge wanted him to give a reasonable payment schedule, which he couldn't give, and basically said, no, go make a decision whether you dismiss or not. And he dismissed. He requested to. Of course, his plan here. But his lawyers then who haven't been paid with the dismissal of the case are not stayed from collecting. Oh, no. In fact, one of his other lawyers who was involved in the interim, who was the one who raised the argument which has brought us before this court, also ended up suing him as well. All of which would suggest that the dismissal of the case has real consequences. I believe it does. Here, too. It does, Judge. But when we talk about disrupting a payment schedule, bear in mind that this was a 100 percent payout to unsecured creditors as well. So whichever category we're in, we're supposed to be paid 100 cents on the dollar. The only difference is we get interest on it after the fact. But the issue is, what was the status at filing, not at confirmation? And that is how this plan proceeded. And that's how the case law is in this area. And that's why we got post-petition interest, because we were oversecured when the case was filed. And that basically is our position, Judge. Thank you. Thank you, Mr. Leonard. We have your case. We'll proceed to the last one for the day.